IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KAREN M. LILLARD, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-11-454-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Karen M. Lillard requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the decision of the Commissioner is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on November 3, 1966, and was forty-four years old at the time of the third administrative hearing. She has a seventh grade education (Tr. 325) and no past relevant work (Tr. 278). The claimant originally alleged inability to work since January 23, 1978, but later amended her alleged onset date to December 14, 2004 at the second administrative hearing (Tr. 241-42). The claimant alleges that she is unable to work because of back, leg, and pelvis pain related to injuries originally sustained as the result of an automobile accident when she was 12 years old.

## Procedural History

The claimant applied for supplemental income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on December 14, 2004. Her application was denied. ALJ John Volz conducted an administrative hearing and found that the claimant was not disabled in a decision dated January 5, 2007. The Appeals Council remanded the case for further analysis of the claimant's residual functional capacity ("RFC") as well as the duration of her work episodes (Tr. 37-39). ALJ Richard Kallsnick conducted another administrative hearing and again determined that claimant was not disabled in a decision

dated June 20, 2008.  The Appeals Council denied review, but this Court reversed in Case No. CIV-09-207-FHS-SPS and remanded the case for further proceedings.  ALJ Michael A. Kirkpatrick held a third administrative hearing and decided that the claimant was not disabled on June 13, 2011 (Tr. 273-280). The Appeals Council denied review, so this last opinion (dated June 13, 2011) is the final decision of the Commissioner for purposes of this appeal.  *See* 20 C.F.R. §  416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant retained the RFC to perform sedentary work, 20 C.F.R. § 416.967(a), limited to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 276).  The claimant had no past work to which she could return, but the ALJ nevertheless found that she was not disabled because there was work she could perform, *i. e.*, machine feeder, call out operator, and table worker (Tr. 279-80).

## Review

The claimant contends that the ALJ erred: (i) by failing to obtain a consultative examination to assess her cognitive impairment; (ii) by failing to include in her RFC any limitations corresponding to her severe impairment of carpal tunnel syndrome; and, (iii) by failing to properly analyze the credibility of her testimony.  The Court finds all these contentions unpersuasive, and the Commissioner's decision must therefore be affirmed.

The medical evidence in the administrative record is quite limited. The claimant did not have a treating physician, as she testified that she could not afford medical care and was not eligible to receive the benefit of the Indian Health Service (Tr. 206). She represented in her questionnaire that Dr. Wayne Mosier was her treating physician, but she visited Dr. Mosier once in 2003 for a consultation related to a "sore tailbone" suffered in a domestic dispute (Tr. 166). In a letter to the Social Security Agency, Dr. Mosier indicated that the claimant's symptoms were "easily remedied with manipulation" and that he could find no basis for claim of disability (Tr. 166).

Dr. Nelson Onaro, a physician with the Disability Determination Division, saw the claimant in connection with her disability claim prior to the first administrative hearing. He found no abnormalities with her gait or ability to manipulate small objects and grasp tools and placed no restrictions or limitations on her ability to work (Tr. 176). Following remand by the Appeals Council, state agency physician Dr. Michael Karanthanos evaluated the claimant. He indicated that she could lift twenty pounds occasionally and ten pounds frequently, and stand at least two hours in an eight-hour workday, but was limited in her ability to climb, balance, kneel, crouch, crawl, and stoop (Tr. 180). Dr. Karanthanos also indicated that the claimant had limited feeling in her hands, but inexplicably inserted a question mark next to the categories of "Handling (gross manipulation)" and "Fingering (fine manipulation)" (Tr. 181).

The claimant testified at the administrative hearing that she was involved in a car accident at twelve that crushed her pelvic bone, injured her hip and resulted in surgery on

her left knee (Tr. 327-28). She claimed that one leg is now shorter than the other, which causes her to "walk funny," and she still experiences pain in her knee, hip, and back (Tr. 328-29). The claimant also testified she was diagnosed with carpal tunnel syndrome while working at a chicken plant and was put on light work (Tr. 330). She claimed that she felt pain and numbness in her hands and develops knots (Tr. 331). The claimant further testified that she cannot sit more than thirty minutes at a time, stand more than thirty minutes to an hour at a time, walk the length of a football field, or lift more than ten or twenty pounds (Tr. 335).

The claimant first contends that the ALJ failed to fully develop the record because he did not order a consultative exam to assess the extent of any cognitive impairment she may suffer. An ALJ has broad latitude in deciding whether or not to order a consultative examination. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). "When the claimant has satisfied his or her burden" of presenting evidence suggestive of a severe impairment, "then, and only then, [it] becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment." *Id*. at 1167. A consultative examination also may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional tests are needed to explain a diagnosis already in the record. *Id*. at 1166. In this case, the ALJ specifically concluded that there was "no basis for additional testing" (Tr. 278). The claimant contends that this was error because: (i) her attorney requested at

the administrative hearing that an assessment of her cognitive abilities be performed; (ii) she dropped out of school in the eighth grade and performed poorly prior to that; and (iii) she testified that she needed help completing her claim because of her poor ability to read and write.  The Court finds no error here by the ALJ; the claimant's assertions amount to the kind of "unsupported and isolated comment[s]" typically found to be "insufficient to raise the suspicion of a non-exertional impairment."  *Hawkins*, 113 F.3d at 1168, *citing Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996).  The claimant presented no *evidence* (as opposed to her own conclusory statements) that tended to support the existence of any cognitive impairment, such as a prior diagnosis of cognitive impairment or school records documenting the difficulties she claimed.

The claimant next contends that the ALJ erred by finding that her carpal tunnel syndrome (a severe impairment as step two) required no manipulative limitations in her RFC at step four.  *See, e. g., Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.").  The ALJ did, however, discuss evidence related to manipulative limitations at step four and concluded that the medical evidence of record showed the claimant had "normal use of the hands" (Tr. 278).  The ALJ noted findings by Dr. Onaro that the claimant's grip strength was strong, that she could perform both gross and fine manipulation, and that she had normal range of motion in all of her extremities

(Tr. 277). In any event, there is no medical evidence of record that shows the claimant *did have* any manipulative limitations.[3] The Court finds no error in this regard.

Finally, the claimant contends that the ALJ erred in analyzing her credibility, *i. e.*, he failed to properly consider the disabling nature of her pain. A credibility determination is entitled to deference unless the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). Credibility findings should, however "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

The ALJ found, *inter alia*, that "the claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment" (Tr. 277). This Court and others have disapproved such language in the past, as it suggests an improper approach to the process of analyzing the claimant's credibility, *i. e.*, assigning an RFC

---

[3] The claimant notes that Dr. Karanthanos found she was limited in her ability to feel and that the ALJ erred by failing to include this in her RFC. The ALJ mentioned this finding, so it is clear he considered the limitation in assessing the claimant's RFC. And assuming *arguendo* it was error not to include any limitation in the RFC, such error would be harmless because the jobs that the ALJ found the claimant could perform at step five do not require feeling. *See* DICOT 694.686-010; 237.367-014; 739.687-182.

and measuring credibility against the RFC, rather than evaluating credibility (along with the other evidence in the case) and subsequently formulating an appropriate RFC. *See, e. g., Bjornson v. Astrue,* 671 F.3d 640, 645-46 (7th Cir. 2012) ("[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."). *See also McFerran v. Astrue,* 437 Fed. Appx. 634, 637 (10th Cir. 2011) ("The ALJ's ultimate credibility determination is a singularly unhelpful sentence: '[T]he claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment.' We agree with Mr. McFerran that the ALJ's credibility assessment must be set aside."). But in this case the ALJ did not limit his evaluation of the claimant's credibility to the above-mentioned boilerplate language. The ALJ went on to note the relevant factors for evaluating a claimant's credibility as to disabling pain set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), and cited evidence in support of his reasons for finding that the claimant's subjective complaints were not credible. For example, the ALJ mentioned: (i) the claimant demonstrated a safe and stable gait; (ii) the claimant had a full range of motion in all extremities, and her knees had no edema and

were stable; (iii) claimant's back was non-tender and had the full range of motion; and (iv) Dr. Mosier stated the "claimant's physical problems could be treated easily" and knew of no basis for disability (Tr. 277-78). Thus, the ALJ linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. The Court thus finds that the ALJ's analysis of the claimant's credibility determination was not clearly erroneous.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner was therefore supported by substantial evidence. The decision of the Commissioner is accordingly hereby AFFIRMED.

**DATED** this 30th day of September, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma